MISSOURI RESEARCH LABORA-
TORIES, Inc., Plaintiff,

v.

BELL AIRCRAFT CORPORATION,
Defendant.

Civ. A. No. 6589.

United States District Court
W. D. New York.

Jan. 16, 1957.

Brown, Kelly, Turner & Symons, Buffalo, N. Y., and Kappel & Neill, St. Louis, Mo., for plaintiff.

John O. Henderson, U. S. Atty., for Western Dist. of New York, Buffalo, N. Y. (John C. Broughton, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for defendant.

MORGAN, District Judge.

Although removed to this district on the ground that the witnesses were residents herein, this case was submitted on written stipulation and oral argument. Defendant, Bell Aircraft Corporation, a New York corporation, prior to January 30, 1948, entered into a contract with the United States Government, known as Prime Contract W–33–038–AC–14169. Under this Prime Contract, defendant, Missouri Research Laboratories, Inc., a Missouri corporation, entered into a contract, known as Bell Contract 308 (Exhibit A), hereinafter referred to as K308. On January 7, 1948, the accounts and records of plaintiff were examined by the Army Audit Agency at defendant's request, and, on the basis of this audit (Exhibit C), an overhead rate of 91.7% was established for plaintiff and embodied in K308. Entered into on January 30, 1948, K308 called for plaintiff to construct a certain radar apparatus and computor, to be completed by a certain date, at a maximum estimated cost of

$54,153.40. K308 also called for approval of all plaintiff's cost by the Army Air Force contracting officer assigned to plaintiff's plant, and laid down certain conditions concerning the determination of allowable costs.

On September 27, 1948, the General Accounting Office in Informal Inquiries 1 and 2, questioned certain invoices rendered by plaintiff in 1948, questioning inter alia inclusions in direct labor costs of the salaries paid to John Hexem, Chief Engineer and William Terry, Second Computor Design Engineer. In September, 1948, it became apparent that plaintiff could not complete the contract within the original estimate because of original under-estimation of costs, and because of addition to specifications subsequent to January 30, 1948. On October 13, 1948, plaintiff and defendant executed Supplemental Agreement No. 1 to K308 (Exhibit A–1). This never became effective because it was never approved by the Air Force Contracting Officer. Prior to December 15, 1948, the Department of Air Force conducted an audit of plaintiff's books and records for the period February 1st to October 31st, establishing an overhead rate of 76.83% based on inclusion of John Hexem in direct labor costs (Exhibit E).

On January 14, 1949, the parties entered into Supplemental Agreement No. 1 to K308, hereinafter referred to as SA–1 which, inter alia, raised the estimated total cost of K308 to $82,001.56, limited direct labor cost to $42,392.57, limited direct material and travel expense to $7,038.78; provided that overhead be determined pursuant to Article No. 3 of K308, and expanded the direct labor classifications upon which overhead was based.

On April 12, 1949, plaintiff completed services under K308 and shipped the radar apparatus and computor to defendant.

On September 26, 1949, the Department of the Air Force conducted an audit of plaintiff's books, developing a final overhead figure of $34,745.72 applicable to labor directly expended under K308, of which $32,570.21 has been paid, the balance being in excess of the total contract limitation as such contract was amended by SA–1.

On January 20, 1950, defendant prepared Supplemental Agreement No. 2 to K308 and sent same to plaintiff. It was never executed and never became effective (Exhibit I).

In January, 1951, General Accounting Office took formal exception to certain costs reimbursed to plaintiff by defendant under K308. The exception totalled $7,989.65, but was reduced by $2,175.51 the amount said to be in excess of total contract limitation and formalized at $5,814.14 (Exhibit G).

Plaintiff has received from defendant the full amount claimed by it on account of direct labor costs under Sub. 5 of SA–1 in the sum of $42,392.57 and no further claim is made even though plaintiff did disburse $5,925.21 in excess of this amount. Plaintiff has received $6,888.78 on account of material and travel, the full amount due under SA–1, less $150 disallowed by Air Force Audit, which $150 plaintiff now claims (Exhibits H and I). Plaintiff has received $32,570.21 on account of overhead expense, less the sum of $5,814.14 disallowed by the General Accounting Office.

Plaintiff contends that under SA–1, K308, it was entitled to receive 91.7% of its direct labor costs as its overhead expense, i. e., $38,873.99 of which it has received $26,576.07 and that defendant therefore owes it $12,117.92 which amount was approved by a United States Air Force auditor (Exhibit K–15). But this claim was not approved by the cognizant Administrative Contracting Officers (Exhibits K–15 and K–26).

Moreover, under Article 6, paragraph c of K308, the overall estimated cost provided for in Article 2, sub. A, is the maximum amount that can be paid by defendant to plaintiff unless, or until, such overall cost figure is changed by written agreement between the parties. This procedure was followed in SA–1, when the overall estimated cost was raised from $51,350 to $82,001.56. The only

way in which plaintiff could secure an amount greater than the last named sum would be by written agreement between the parties, that is, by a further supplemental agreement. Since no such agreement was ever made, the sum of $82,001.86 is the maximum owing and payable to plaintiff.

As to the determination of overhead, defendant contends that the 91.7% of labor cost provision set out in Article 3, paragraph G of K308, was amended by SA–1 in which labor cost was set at a maximum of $42,392.57, as a result of actual audit, rather than a percentage of labor costs. However, a difficulty arises over whether paragraph "Third" of SA–1 had the effect of simply changing the similar wording of Article 3, Sub. g of K308, or rather deleted the whole of Sub. g and substituted paragraph "Third" in its place. Webster's New Collegiate Dictionary defines "amended" as "To change or alter in any way, especially in phraseology", and defines "delete" as "To erase". In SA–1, the draftsman was careful in paragraphs "First" and "Sixth" to specifically use the word "delete" and substitute other language in place thereof. In paragraphs "Second", "Third" and "Fourth", provisions of the original contract are "amended". It is presumed that the contracting parties used words of definite meaning. I conclude that paragraph "Third" altered the similar language of Article 3, sub. g of K308, and left the rest of Sub. g unchanged, rather than deleting the whole of Sub. g and substituting paragraph "Third" in its place.

Nowhere in K308 or SA–1 is it provided that overhead costs be determined by actual audit of those costs, and further, in Article 5 of SA–1, it is expressly provided that overhead be determined pursuant to Article 3 of K308. Reference to Article 3 of K308 reveals only one method of determining overhead costs, to wit, 91.7% of all direct labor cost. The amount of overhead thus apparently owing and payable to plaintiff is $38,873.99 since plaintiff has admittedly incurred the full amount of direct labor cost allowed. This is the plain effect of K308 and SA–1. In K308, the parties agreed to an overhead cost of a definite percentage of a variable figure. SA–1 changed the variable figure to a fixed figure, but specifically in Article 6 retained the percentage determinant. The parties must be presumed to have realized that in changing the variable figure into a fixed figure, they were also fixing the amount of overhead cost, assuming that, as happened here, the full fixed figure was expended by plaintiff.

However, the payment of $38,873.99 to plaintiff would cause the overall estimated cost called for by Article 2 of SA–1 to be exceeded by $6,153.78. Thus we find K308 as amended by SA–1 in Article 2 and Article 5 in conflict. Since Article 2 places a maximum limit on payments, and Article 5 simply provides the method of determining a part of the payments limited by Article 2, Article 2 must be considered superior and controlling. Thus the maximum payable to plaintiff on account of overhead costs is $5,964.14 plus legal interest from the date payment of such sum fell due, and costs.

Plaintiff seeks an additional sum of $150 the premium paid for shipping insurance on the radar and computor, at defendant's direction when shipped to defendant at the completion of the contract. Plaintiff contends that this should be specifically an "allowable expense", though no such specific category is provided in K308 or SA–1. Of the three expense categories provided in the contract, plaintiff admits that this sum is not properly a material and travel expense; it is obviously not a direct labor expense. It must fall into the only category left, to wit, overhead expense. In addition, it would appear from its character to be properly an overhead expense item. As an item properly of overhead expense, the $150 sought by plaintiff is disallowed, except as it may already be included in the amount of overhead expense allowed or received.

Exhibit C is not admitted into evidence, since it is self-serving and not binding on the plaintiff. Exhibit K12 is not admitted, since it is irrelevant in that it pertains to unexecuted agreements. Exhibits K6, K11, K13 and K26 are admitted into evidence over plaintiff's objection. The exhibits which were not stipulated by the parties in general bear only upon the intent of the parties. In view of our interpretation of the contract, we do not consider the question of intent of the parties material. Regardless of the assumptions of the parties as to the effect of their acts, the above decision reflects the plain meaning of the written instruments.

Other collateral matters raised by the parties need not here be decided in view of the above opinion.

Enter judgment, in accordance with this opinion on notice.